IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EMILY GARRITY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 20-cv-01334 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| SUN LIFE AND HEALTH INSURANCE | ) | |
| COMPANY (U.S.), | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Emily Garrity's husband, Richard, died after suffering a head trauma in 2017.[1]
When Garrity submitted a claim for accidental death benefits pursuant to her husband's insurance
policy, Defendant Sun Life Health Insurance Company ("Sun Life") denied her claim. As a result,
Garrity filed this lawsuit to obtain benefits pursuant to § 502 of the Employee Retirement Income
Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132. Garrity also has asserted state-law claims for
breach of insurance contract and violations of the Illinois Consumer Fraud and Deceptive
Business Practices Act ("ICFA"), 815 ILCS 505/1 *et seq.* Now before the Court is Sun Life's
motion to dismiss the state-law claims pursuant to Federal Rule of Civil Procedure 12(b)(6) and to
strike Garrity's demand for a jury trial. (Dkt. No. 14.) For the reasons stated below, the motion is
granted.

## BACKGROUND

For purposes of Sun Life's motion, the Court accepts all well-pleaded allegations in the
complaint as true and draws all reasonable inferences in Garrity's favor as the non-moving party.
*Regains v. City of Chicago*, 918 F.3d 529, 533 (7th Cir. 2019). The Court does not, however,

---

[1] For clarity, in this Memorandum Opinion and Order, the Court refers to Emily Garrity as "Garrity" and
Richard Garrity as "Richard."

vouch for the objective truth of those allegations. *Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018).

As alleged, Garrity's husband Richard worked at Heineken USA, Inc. ("Heineken") at all times relevant to the complaint. (Compl. ¶ 6, Dkt. No. 1.) Richard participated in Heineken's accidental death insurance plan, with Garrity as his beneficiary. (*Id.* ¶ 7.) In fact, Richard was enrolled in two accidental death policies through Heineken. Under the first policy ("Policy 1"), Sun Life was required to pay Garrity $191,000 in the event of Richard's accidental death. (*Id.* ¶¶ 9–10.) Under the second policy ("Policy 2"), which was completely voluntary for employees and to which Heineken made no contributions, Sun Life was required to pay Garrity $410,000 in the event of Richard's accidental death. (*Id.* ¶¶ 28–29, 34.)

On May 16, 2017, Richard fell on a hard surface while exiting a baseball stadium and died due to the resulting head trauma. (*Id.* ¶ 11.) Garrity subsequently submitted a claim for benefits to Sun Life. (*Id.* ¶ 12.) Sun Life denied Garrity's claim on June 19, 2018, pursuant to a section of Richard's policies that specifically excluded payment for losses from a death or accident caused by the plan participant being under the influence of alcohol or non-prescription drugs. (*Id.* ¶ 13.) However, neither the Cook County Medical Examiner nor the Chicago Police Department—both of which investigated Richard's accident—found intoxication to be a cause or contribution condition or factor with respect to the accident. (*Id.* ¶¶ 14–15.) Sun Life nonetheless based its finding that Richard was intoxicated on the opinions of two retained physician consultants, who Garrity alleges are not certified in Forensic Pathology or Toxicology. (*Id.* ¶¶ 16–17.)

Based on the allegations, Garrity's complaint asserts three causes of action against Sun Life. Count I is a claim for a declaratory judgment pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), requesting an equitable order requiring Sun Life to pay Garrity benefits under Policy

1. Count II consists of an Illinois state-law claim for breach of insurance contract in connection with Policy 2. Count II also includes a claim for damages under the Illinois Insurance Code, 215 ILCS 5/155. Count III asserts a claim for violations of the ICFA, 815 ILCS 505/1 *et seq.*, alleging that Sun Life attempted to induce Garrity to settle her claim for less than Richard's policies were worth by intentionally misrepresenting the relevant facts and law.

## DISCUSSION

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). However, conclusory language or "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 at 678 (quoting *Twombly*, 550 U.S. at 555). Additionally, under Rule 12(f), courts may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are generally disfavored. *Williams v. Jader Fuel Co., Inc.*, 944 F.2d 1388, 1400 (7th Cir. 1991). "Motions to strike are appropriate, however, if they expedite litigation, and sometimes striking a jury demand might do that." *Fed. Deposit Ins. Corp. for Valley Bank v. Crowe Horwath LLP*, No. 17 CV 04384, 2018 WL 1508485, at *2 (N.D. Ill. Mar. 27, 2018).

### I.     Motion to Dismiss

Sun Life contends that Garrity's breach of contract and ICFA claims must be dismissed because they are wholly preempted by federal law under ERISA. "Preemption is an affirmative defense, and pleadings need not anticipate or attempt to circumvent affirmative defenses." *Bausch v. Stryker Corp.*, 630 F.3d 546, 561 (7th Cir. 2010) (internal citation omitted); *see also Fifth Third Bank ex rel. Tr. Officer v. CSX Corp.*, 415 F.3d 741, 745 (7th Cir. 2005) ("Federal preemption is an affirmative defense upon which the defendants bear the burden of proof."). "[T]hese defenses typically turn on facts not before the court" the motion to dismiss stage. *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). But "when all relevant facts are presented," the Court may dismiss claims based on an affirmative defense. *Id.; see also Podgorski v. Liberty Mut. Grp. Inc.*, No. 16 C 5549, 2016 WL 7187265, at *2 (N.D. Ill. Dec. 12, 2016) ("Whether a law is preempted is a question of law which a court may decide at the motion to dismiss stage."). Garrity disputes that ERISA preempts her breach of contract and ICFA claims. She also alternatively contends that ERISA's savings clause exempts her state-law claims from preemption. *See* 29 U.S.C. § 1144(b)(2)(A).

In deciding whether a federal statute preempts state law, courts consider Congress's intent in passing the federal statute. *Patriotic Veterans, Inc. v. Indiana*, 736 F.3d 1041, 1046 (7th Cir. 2013). "[G]iven the historic police powers of the states, a court must assume that Congress did not intend to supersede those powers unless the language of the statute expresses a clear and manifest purpose otherwise." *Id.* With respect to ERISA, the statute applies "to any employee benefit plan if it is established or maintained by any employer engaged in commerce." 29 U.S.C. § 1003(a)(1). And ERISA contains an express preemption clause, which states that it "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C.

4

§ 1144(a). Therefore, if any state-law claim "is within the scope of Section 502(a) of ERISA it is completely preempted, no matter how the [plaintiffs] have characterized it." *Klassy v. Physicians Plus Ins. Co.*, 371 F.3d 952, 954 (7th Cir. 2004) (affirming dismissal of the plaintiff's state-law malpractice claim as preempted under ERISA).

The Seventh Circuit has identified three factors for use in determining whether a claim falls within the scope of § 502(a) and thus is preempted by ERISA. *Id.* at 955. First, the plaintiff must be a policyholder or otherwise eligible to bring a claim under § 502(a). *Id.* Second, the Court considers "whether the plaintiff's cause of action falls within the scope of an ERISA provision that the plaintiff can enforce via § 502(a)." *Id.* (internal quotation marks omitted). For this factor, the relevant inquiry is whether the basis for the plaintiff's claim "concerns her rights 'to recover benefits due to [her] under the terms of [her] plan.'" *Id.* (quoting 29 U.S.C. § 1132(a)(1)). And third, the Court determines "whether the plaintiff's state law claim cannot be resolved without an interpretation of the contract governed by federal law." *Id.* (internal quotation marks omitted).

As to the first requirement, Garrity is eligible to bring a § 502(a) claim because she is a beneficiary under Richard's employee benefit plan. *See* 29 U.S.C. § 1132(a)(1). As to the second, Counts II and III fall within the scope of ERISA because they concern Garrity's right to recover accidental death benefits under the terms of Richard's policies. Thus, the first two requirements for preemption are plainly met. But the parties dispute the third requirement—whether Garrity's state-law claims depend on the interpretation of a contract governed by federal law.

The parties agree that ERISA governs Garrity's claims with respect to Policy 1. Indeed, Garrity has brought a separate § 502(a) claim in Count I to recover her benefits under that policy. But Garrity's breach of contract and ICFA claims pertain to Policy 2, which she contends is not covered by ERISA. Specifically, she claims that Policy 2 falls within ERISA's "safe harbor"

provision, which excludes from ERISA coverage group insurance plans that meet certain criteria. *See* 29 C.F.R. § 2510.3-1(j). A plan falls under ERISA's safe harbor provision if (1) the employer makes no contributions towards the plan; (2) employee participation is completely voluntary; (3) the employer's sole functions with respect to the plan are to publicize it, collect premiums, and remit them to the insurer; and (4) the employer receives no consideration for administering the plan's services, apart from compensation for reasonable expenses. *Id.*

Garrity's complaint pleads sufficient facts to show that Policy 2 meets all of the safe harbor criteria. (*See* Compl. ¶¶ 28–31.) For instance, she alleges that Richard's employer, Heineken, did not contribute to the Policy 2 premiums at all and that Richard's decision to acquire additional coverage under Policy 2 was completely voluntary. (*Id.* ¶¶ 28–29.) But Sun Life argues that this is not the proper inquiry because Policy 1 and Policy 2 together are actually part of one overall plan and that the component parts cannot be separated. In support of its position, Sun Life points to the Seventh Circuit's guidance in *Postma v. Paul Revere Life Insurance Co.*, that "[f]or purposes of determining whether a benefit plan is subject to ERISA, its various aspects ought not be unbundled." 223 F.3d 533, 538 (7th Cir. 2000) (citing *Gaylor v. John Hancock Mut. Life Ins. Co.*, 112 F.3d 460, 463 (10th Cir. 1997); *Glass v. United of Omaha Life Ins. Co.*, 33 F.3d 1341, 1345 (11th Cir. 1994); *Smith v. Jefferson Pilot Life Ins. Co.*, 14 F.3d 562, 567 (11th Cir. 1994)).

"A 'plan' under ERISA may embrace one or more policies." *Gross v. Sun Life Assurance Co. of Can.*, 734 F.3d 1, 8 (1st Cir. 2013). Where insurance benefits are "treated as a single group and managed together," courts consider whether the policies, together, constitute a plan that is governed by ERISA. *Id.* at 8–9. Based on this principle, the *Postma* court found that a disability policy that was not funded by the employer still fell within the scope of ERISA because it was part of the employer's broader benefits package. 223 F.3d at 538. The *Postma* rule that various

aspects of an employee benefits plan should not be unbundled "finds support in every other circuit that has considered this issue." *Cehovic-Dixneuf v. Wong*, 895 F.3d 927, 930 (7th Cir. 2018); *see, e.g.*, *Menkes v. Prudential Ins. Co. of Am.*, 762 F.3d 285, 291 (3d Cir. 2014) (affirming dismissal of state-law claims as preempted and rejecting the plaintiff's contention that "closely related components of an overarching welfare benefit plan ought to be unbundled" for purposes of determining whether they are governed by ERISA); *Gross*, 734 F.3d at 7–9 (First Circuit) (affirming finding that the employee-funded long-term disability policy could not be separated from the employer's full insurance package for purposes of an ERISA claim); *Sgro v. Danone Waters of N. Am., Inc.*, 532 F.3d 940, 943 (9th Cir. 2008) (affirming dismissal of state-law claims as preempted by ERISA, holding that "[s]o long as [the employer] pays for some benefits, ERISA applies to the whole plan, even if employees pay entirely for other benefits.").

Although the Seventh Circuit has not set out a test for determining whether multiple policies constitute one plan under ERISA, courts consider whether the different policies have "consistently been treated as a unit" by the employer, employees, and provider. *Gross*, 734 F.3d at 8. For instance, in *Gross*, the First Circuit found that the relevant policies "constituted a unitary ERISA program," where the trustee identified all employee policies by a single group number, the same representative for the employer was listed as the administrative contact on all policies, and the employer received one invoice for all policies. *Id.* In *Menkes*, the Third Circuit declined to "unbundle" separate policies where the policies were covered under one contract between the employer and the insurance provider, the policies' terms, rules, exclusions, and procedures were all the same and contained in the same documents, and there were not separate booklets for the different policies. 762 F.3d at 291. The *Menkes* court also found that considering the policies together was consistent with ERISA's overall policy goal to minimize the administrative burden

7

of complying with different laws in different jurisdictions. *See id.* (citing *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 656–57 (1995) (describing Congress's intention in passing ERISA's preemption clause as "ensur[ing] that plans and plan sponsors would be subject to a uniform body of benefits law; the goal was to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government" (internal quotation marks omitted))).

This Court concludes that Policy 1 and Policy 2 are properly considered parts of one plan governed, as a whole, by ERISA. In reaching this conclusion, the Court has reviewed the text of both policies, which are attached as exhibits to Garrity's complaint.[2] (*See* Compl. Ex. A, Policy 1, Dkt. No. 1-1; Compl. Ex. B, Policy 2, Dkt. No. 1-2.) When considered together with the factual allegations of the complaint, the texts of the policies demonstrate that the policies fall under one comprehensive plan. First, the respective policy numbers are only one digit off from each other, indicating that they were issued together. (*Compare* Policy 1 at 1, *with* Policy 2 at 1 (listing the policy numbers as No. 823596-001 and No. 823596-002, respectively).) Richard's employer Heineken is listed as the policyholder, sponsor, and administrator on both policies. (*See* Policy 1 at 1; Policy 1, Summary Plan Description ("Summary") at 53 of 56; Policy 2 at 1; Policy 2, Summary at 19 of 20.) Both policies direct participants with questions about the plan to contact Heineken. (*See* Policy 1, Summary at 55 of 56; Policy 2, Summary at 20 of 20.) Both policies inform participants of the same rights under ERISA. (*See* Policy 1, Summary at 55 of 56; Policy 2, Summary at 20 of 20); *see also Lamkins v. Dress Barn, Inc.*, No. 14 C 8118, 2015 WL 3407372, at *3 (N.D. Ill. May 27, 2015) (considering the fact that a plan "include[d] a section about the

---

[2] Generally, courts can only consider the factual allegations of the complaint in ruling on a motion to dismiss. *Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501, 505 (7th Cir. 2013). But "a copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). Therefore, it is appropriate for the Court to consider the policies themselves in connection with the present motion.

rights afforded to participants under ERISA" weighed in favor of a finding that the plan was

governed by ERISA). And the policies share many of the same terms. For instance, and most

relevantly to Garrity's lawsuit, both list the same exclusions for accidental death coverage,

including intoxication. (*Compare* Policy 1 at 17–18, *with* Policy 2 at 10 (both listing "your being

intoxicated or under the influence of any narcotic unless administered on the advice of a

Physician" as an exclusion).) Therefore, treating Policies 1 and 2 as one comprehensive plan is

consistent with ERISA's goal of ensuring that employers and providers who choose to offer

employee benefits are not subject to conflicting laws and inconsistent outcomes.

Given that ERISA governs both Policy 1 and Policy 2, the Court finds that Garrity's state-

law claims cannot be resolved without reference to terms governed by federal law. For example, if

the Court were to determine that Sun Life fairly interpreted the policies' terms and rightfully

denied Garrity's claim, then Sun Life could not have breached its contract or fraudulently

misrepresented the state of Garrity's claim. Counts II and III, asserting claims for breach of

insurance contract and ICFA violations, respectively, are therefore preempted. *See Lamkins*, 2015

WL 3407372, at *4 (dismissing the plaintiff's breach of contract, ICFA, and common law fraud

claims as preempted under ERISA); *Trainor v. SBC Servs., Inc.*, No. 04 C 779, 2004 WL

2958684, at *4–5 (N.D. Ill. Dec. 20, 2004) (dismissing the breach of contract and fraud state-law

claims which could not "be resolved without reference to and interpretation of" the relevant

ERISA plan).

Garrity asserts that even if her claim for breach of insurance contract under Count II would

otherwise be preempted under ERISA, it is specifically exempted under the statute's savings

clause. The savings clause exempts from preemption "any law of any State which regulates

insurance." 29 U.S.C. § 1144(b)(2)(A). The clause applies when a state law "is specifically

directed towards entities engaged in insurance" and "substantially affect[s] the risk pooling arrangement between the insurer and the insured." *Ky. Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329, 341–42 (2003). Garrity contends that Count II is exempt from ERISA preemption because it requests damages for unreasonable and vexatious delay and other improper practices under the Illinois Insurance Code ("Code"), 215 ILCS 5/155. (*See* Compl. ¶¶ 46–48.)

Despite Garrity's protestations to the contrary, however, courts in this District have found that § 155 of the Code does not regulate insurance for purposes of ERISA's savings clause. *See Lamkins*, 2015 WL 3407372, at *4; *Jacobson v. Humana Ins. Co.*, No. 05 C 1011, 2005 WL 1563154, at *4–5 (N.D. Ill. June 6, 2005); *Dwyer v. Unum Life Ins. Co. of Am.*, No. 03 C 1118, 2003 WL 22844234, at *5 (N.D. Ill. Dec. 1, 2003); *Clark v. Hewitt Assocs., LLC*, 294 F. Supp. 2d 946, 953 (N.D. Ill. 2003). As explained in *Lamkins*, "Section 155 does not affect the transfer or spread of a policyholder's risk. Rather, it regulates the procedural aspects of claims processing by providing certain remedies to sanction vexatious insurance practices." 2015 WL 3407372, at *4. In addition, "[a]llowing Plaintiff to assert a claim under Section 155 of the Illinois Insurance Code would almost certainly undermine ERISA's explicit enforcement procedures." *Jacobson*, 2005 WL 1563154, at *5. Notably, Garrity has not pointed to any case holding to the contrary. This Court agrees with others in this District that have concluded the Code merely provides remedies for certain claims practices and does not affect overall risk pooling between the insurer and the insured. *See Ky. Ass'n*, 538 U.S. at 341–42. ERISA's savings clause is thus inapplicable.

In sum, the Court concludes that Counts II and III of Garrity's complaint are preempted under ERISA. Sun Life's Rule 12(b)(6) motion to dismiss is therefore granted.

## II.    Motion to Strike

The Court next turns to Sun Life's request that the Court strike the jury demand included in Garrity's complaint. "The general rule in ERISA cases is that there is no right to a jury trial because ERISA's antecedents are equitable, not legal." *Divane v. Nw. Univ.*, 953 F.3d 980, 994 (quoting *McDougall v. Pioneer Ranch Ltd. P'ship*, 494 F.3d 571, 575–76 (7th Cir. 2007)) (approving in *dicta* of striking the jury demand in an ERISA case)). Accordingly, courts in this District routinely grant motions to strike a jury demand where the plaintiff seeks solely equitable relief under ERISA. *See, e.g.*, *Daugherty v. Univ. of Chi.*, No. 17 C 3736, 2017 WL 4227942, at *9 (N.D. Ill. Sept. 22, 2017); *Walker v. Life Ins. Co. of N. Am.*, No. 08 C 6768, 2009 WL 561834, at *2 (N.D. Ill. Mar. 2, 2009); *Jetseck v. Prudential Ins. Co. of Am.*, No. 07 C 3753, 2007 WL 3449031, at *2 (N.D. Ill. Nov. 15, 2007). As stated above, Garrity's state-law claims asserted in Counts II and III must be dismissed as preempted. Her only remaining claim (Count I) states a claim for equitable relief under ERISA § 502(a)(3), with respect to which she has no right to a jury. Sun Life's motion to strike Garrity's jury demand is therefore granted.

## CONCLUSION

For the reasons stated above, Sun Life's motion to dismiss (Dkt. No. 14) is granted. Counts II and III of Garrity's complaint are dismissed as preempted by federal law and her jury demand is stricken.

ENTERED:

Dated:  March 31, 2022

_____
Andrea R. Wood
United States District Judge

11